**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

**SHARON OSTBERG**

       Plaintiff,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

       Defendant.

**COMPLAINT AND JURY DEMAND**

COMES NOW, Sharon Ostberg, through counsel John Case, P.C. and states as her complaint:

1. The Plaintiff Sharon Ostberg is a resident of Grayson, Georgia.

2. The Defendant State Farm Mutual Automobile Insurance Company ("State Farm") is a foreign corporation organized and existing under the laws of the state of Illinois, authorized to conduct insurance business in Colorado, with its principal place of business in Colorado located at 1555 Promontory Circle, Greeley CO 80638-0001.

3. This case arises out of a claim for underinsured motorist benefits that was adjusted by adjusters at State Farm's office in Greeley Colorado, under State Farm insurance policies that were sold in Colorado, and an automobile collision that occurred in Colorado.

4. State Farm's registered agent in Colorado is Corporation Service Company 1900 W. Littleton Blvd. Littleton CO 80120.

5. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000 excluding costs and interest.

6. State Farm issued the following three policies of automobile insurance: Policy number 1807978-C16-06D, which was in effect September 16, 2012 to March 16, 2013; Policy number 0726217-E14-06H, which was in effect November 14, 2012 to May 14, 2013; and Policy number 3421565-F06-06P, which was in effect December 6, 2012 to June 6, 2013 (collectively "the State Farm Policies" or "the policies").

7. The policies were sold by State Farm's agent, Garrett Callaway Insurance Agency in Thornton Colorado.

8. The policies provided underinsured motorist coverage.

9. At all relevant times the Plaintiff was an insured under the underinsured motorist provisions of the policies.

10. On January 15, 2013 the Plaintiff suffered bodily injury in a two-car automobile collision that occurred near the intersection of East Hampden Avenue and South Chambers Road in the City of Aurora, County of Arapahoe, Colorado ("the collision").

11. Plaintiff was driving a 1998 Mazda Sedan westbound on E. Hampden Ave.

12. Plaintiff was wearing a seatbelt.

13. Vickie Cox drove a 1999 Ford F350 pickup truck from a driveway into the path of Plaintiff's moving vehicle.

14. The vehicles collided in Plaintiff's westbound lane of travel on E. Hampden Ave.

15. After the collision, Vicki Cox told the investigating Aurora Police officer that the collision "was my fault."

16. The day after the collision, Vicki Cox told an adjuster for Allstate Insurance that Ms. Cox "doesn't think [the Plaintiff Sharon Ostberg] could do anything to prevent the accident and insured admits fault and is sorry."

17. Vickie Cox failed to exercise reasonable care operating her vehicle.

18. Vickie Cox's negligence caused bodily injury to the Plaintiff.

19. The Plaintiff suffered bodily injuries, including but not limited to sprains and strains of her cervical, thoracic, and lumbar spine, herniations of the intervertebral discs at L4-5 and L5-S1, damage to the SI joint, and damage to the facet joints at L4-5 and L5-S1.

20. The Plaintiff required, and continues to require, medical treatment, including chiropractic care, radiology studies, physical therapy, SI joint injections, lumbar spinal injections, and lumbar RF neurotomy procedures.

21. The Plaintiff incurred expenses for her medical care, and she will continue to incur such expenses in the future.

22. The Plaintiff suffered pain in her neck, mid back, and low back, with the most severe pain in her low back on the right. She will continue to suffer such pain in the future.

23. As a result of her injuries, the Plaintiff was occupationally disabled from performing her duties as a sales support manager for Pep Boys.

24. Plaintiff is medically restricted from lifting pallets, car batteries, and other objects weighing more than 20 pounds.

25. A functional capacity evaluation determined that the Plaintiff can no longer perform work in the heavy category.

26. The Plaintiff lost wages as a result of her injuries.

27. Because the Plaintiff can no longer perform heavy labor, she suffered a loss of earning capacity, and she will continue to suffer such loss of earning capacity in the future.

28. The Plaintiff suffered permanent physical impairment.

29. Plaintiff's aforesaid injuries and damages are permanent and are expected to continue

indefinitely into the future.

30. At the time of the collision Vickie Cox was insured under a motor vehicle liability policy issued by Allstate Insurance having a per-person liability limit of $100,000.

31. On July 26, 2016 Allstate tendered its full per-person liability coverage limit of $100,000 to settle Plaintiff's personal injury claim against Vickie Cox.

32. On August 4, 2016 the Plaintiff accepted Allstate's policy limits offer of $100,000.

33. State Farm consented to the settlement in a letter dated August 4, 2016 signed by State Farm Claim Specialist Libby Fisher.

34. At the time of the collision the Plaintiff was a named insured under State Farm policy number 1807978-C16-06D, which provides underinsured motorist benefits of $50,000 per person.

35. At the time of the collision the Plaintiff was an insured under State Farm policy number 0726217-E14-06H, which provides additional underinsured motorist benefits of $100,000 per person.

36. At the time of the collision the Plaintiff was an insured under State Farm policy number 3421565-F06-06P, which provides additional underinsured motorist benefits of $100,000 per person.

37. Under any reasonable valuation, Plaintiff's collision-related injuries and damages exceed the amount of the Allstate settlement by more than $250,000.00.

38. On January 12, 2017, Plaintiff's counsel sent a 24 page demand letter to State Farm, a copy of which is attached to this complaint as Exhibit 1.  The demand described the collision, and itemized the Plaintiff's injuries and damages.  Itemized damages included Plaintiff's past medical bills of $48,447.87, future medical bills of $18,675, past and future lost wages and retirement benefits of $206,050, physical pain and suffering and physical impairment of $468,000, and pre-judgment interest of $266,822.23.  The demand requested payment of $250,000.00, the full-per person limit of the UIM coverage available to Plaintiff under the Policies.

39. The demand showed that Plaintiff's collision related damages, including pre-judgment interest, totaled $1,007,995.10.

40. Plaintiff provided the following records to State Farm with her demand for UIM benefits:

    a. The Aurora Police accident report;
    b. Vickie Cox's admission of fault to the investigating officer;
    c. Vickie Cox's admission of fault to the Allstate adjuster who investigated the collision;
    d. The Aurora Municipal Court file in which Vickie Cox pleaded guilty to a traffic violation;
    e. Photographs of the accident scene;
    f. Photographs of the Plaintiff's vehicle after the collision;
    g. A list of Plaintiff's medical expenses;
    h. Plaintiff's post-collision medical records, including the following:
        (1) Chiropractor Arthur Phelps;
        (2) Board-certified physiatrist and pain management specialist J. Scott Bainbridge, M.D.;

   (3) Centrum Surgical Center

   (4) DeKalb Georgia Medical Center

   (5) Dr. Navid;

   (6) Georgia Pain and Wellness;

   (7) Greenwood Ambulatory Surgery Center;

   (8) Pharmacy records;

   (9) Radiology records;

   (10) Operative report of SI joint injection procedure 10/6/2016

 i. Plaintiff's pre-collision medical records from Swedish Medical Center;

 j. State Farm's Medical Payments file;

 k. Reports of Dr. J. Scott Bainbridge August 11, 2015 and June 14, 2016;

 l. Report of board certified orthopedic surgeon Robert L. Messenbaugh, M.D., retained by Allstate to perform an Independent Medical Evaluation of Plaintiff;

 m. Plaintiff's Social Security Earnings Statement;

 n. Plaintiff's payroll record from Pep Boys;

 o. Comprehensive Vocational Evaluation by Meredith Sinclair, M.S., C.R.C.

 p. Notice of Vocational Rehabilitation status change Letter of Karen Gregory 8/31/2016;

 q. Income loss reports of economist Jeff Opp;

 r. Pre-incident photos of Sharon Ostberg

 s. Materials related to auto collision 2/24/2006

 t. Worker Compensation file related to left ankle sprain 6/20/2009;

41. On March 16, 2017, State Farm valued the Plaintiff's claim at or above $10,000.

42. On March 16, 2017, State Farm sent a letter to the Plaintiff offering to settle the underinsured motorist claim of the Plaintiff for $10,000. A copy of State Farm's letter is attached as Exhibit 2.

43. On March 16, 2017, at the time of making the offer, State Farm unreasonably delayed tendering payment of $10,000 of UIM benefits.

44. On September 30, 2017 State Farm sent two the Plaintiff's counsel a check for $10,000 UIM benefits, with a letter stating that the check constituted "our initial offer." A copy of State Farm's letter is attached as Exhibit 3.

45. The letter also stated, "This payment should be considered an advance without prejudicing your client's right to receive a higher amount in the future through continued negotiations."

46. The letter also stated, "We will continue to evaluate any and all new information you may have that could affect our evaluation."

47. On January 3, 2018, Plaintiff's counsel submitted to State Farm an 18 page supplemental demand letter, a copy of which is attached as Exhibit 4, along with 18 exhibits, including the functional capacity evaluation performed by Heather A. Cox, MS, OTR/L, Certified Functional Evaluator, employment records of the Plaintiff at Jo-Ann Stores, and a supplemental wage loss report. Exhibit 4 demonstrated that the Plaintiff needed ongoing medical care consisting of physical therapy, SI joint injections, and RF neurotomy procedures. Exhibit 4 itemized past medical bills of $61,112.73, future medical bills of $28,412, past and future pain and suffering of $368,000, permanent physical impairment of $100,000, past and future lost wages of $176,442, and prejudgment interest of $330,996.73.

48. On January 31, 2018 State Farm sent a letter to Plaintiff's counsel stating, "Based on the documentation provided, State Farm is willing to settle your client's claim for $20,000." A copy of State Farm's letter is attached as Exhibit 5.

49. On February 1, 2018 Plaintiff's counsel sent State Farm a letter requesting confirmation of $250,000 of UIM coverage, and requesting State Farm to state how much money it allowed for each category of damages. A copy of counsel's letter is attached Exhibit 6.

50. On February 9, 2018 State Farm responded to Exhibit 6. A copy of State Farm's response is attached as Exhibit 7.

51. On May 10, 2018, Plaintiff's counsel again requested that State Farm confirm UIM coverage of $250,000, and requested State Farm to answer questions about its evaluation of the claim. A copy of counsel's letter is attached as Exhibit 8.

52. On June 13, 2018 Plaintiff's counsel sent a follow-up letter to State Farm, again requesting that State Farm confirm UIM coverage of $250,000 and that State Farm answer questions about its evaluation of the claim. A copy of counsel's letter is attached as Exhibit 9.

53. On June 27, 2018 State Farm sent a letter which answered some of Plaintiff's questions, but the letter refused to confirm UIM coverage. A copy of State Farm's letter is attached as Exhibit 10.

54. On June 28, 2018, Plaintiff's counsel requested that State Farm immediately pay the undisputed amount of $20,000 additional UIM benefits. A copy of counsel's letter is attached as Exhibit 11.

55. State Farm unreasonably delayed and denied Plaintiff the benefits which it owes her under the Policies.

## **FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment Pursuant to 28 U.S.C. § 2201 and F.R.C.P. 57)**

56. Plaintiff incorporates by reference all other allegations of this complaint.

57. At all relevant times, the State Farm Policies were in full force and effect.

58. At all relevant times, Plaintiff was an insured under the Policies for purposes of UM/UIM coverage.

59. The vehicle that Vicki Cox was driving at the time of the collision was "underinsured" as the Policies and/or applicable law define that term.

60. At all relevant times, the Plaintiff was legally entitled to recover or collect damages from Vicki Cox, the owner/operator of an underinsured motor vehicle.

61. All conditions precedent to State Farm's contractual obligation to pay the Plaintiff UM/UIM benefits under the Policies have been performed or have occurred.

62. The value of the Plaintiff's injury claim against Vicki Cox exceeds $350,000.00.

63. The per-person limit of Vicki Cox's Allstate liability coverage is insufficient to compensate the Plaintiff fully and fairly for the injuries, damages and losses she suffered and will continue suffer as a direct and proximate result of the collision.

64. The Plaintiff has demanded payment of UM/UIM benefits under the State Farm Policies, and State Farm has refused to pay the benefits to which Plaintiff is entitled.

65. Pursuant to 28 U.S.C. § 2201 and F.R.C.P. 57, the Plaintiff respectfully requests that this Court determine and declare her rights under the UM/UIM coverage provisions of the State Farm Policies and find that the full per-person limit of each policy, a total of $250,000, is payable to the Plaintiff.

WHEREFORE, the Plaintiff requests that this Honorable Court enter judgment in her favor and

against the defendant State Farm Automobile Mutual Insurance Company declaring that the plaintiff is insured under UM/UIM provisions of the State Farm Policies, and that the Plaintiff is entitled to UIM benefits up to the $250,000 per-person limit of said coverage.

### SECOND CLAIM FOR RELIEF

**(Unreasonable Delay/Denial in Payment of Claim for First-Party UIM Benefits)**

66. Plaintiff incorporates all other allegations of this complaint.
67. Pursuant to C.R.S. § 10-3-1115(1)(a), a person engaged in the business of insurance may not unreasonably delay or deny payment of a claim for benefits owed to a first-party claimant.
68. State Farm is, and at all relevant times was, a person engaged in the business of insurance.
69. The Plaintiff is, and at all relevant times was, a first-party claimant as that term is defined in C.R.S. § 10-3-1115(1)(b)(I).
70. Pre-judgment interest is an element of damages that an insurer must consider in evaluating an insured's first party claim for underinsured motorist benefits.
71. State Farm did not consider pre-judgment interest as an element of Plaintiff's damages.
72. State Farm willfully violated the following provisions of the Colorado Unfair Practices Act, C.R.S. §10-3-1104 (1):

   (f) (XIII)  Making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy of sickness and accident insurance, in the benefits payable under such policy, in the terms or conditions of the policy, or in any other manner;

(h) (V) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(h) (VI) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

(h) (VII) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

(h) (XIV) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement:

73. State Farm unreasonably delayed and denied the Plaintiff the UIM benefits to which she is entitled under C.R.S. § 10-4-609(1)(c) and the State Farm Policies.

74. The actions of State Farm constitute denial and/or delay in paying a covered first-party benefit without a reasonable basis.

75. The actions of State Farm caused the Plaintiff to suffer injuries, damages and losses in amounts to be proven at trial.

76. Pursuant to C.R.S. § 10-3-1116(1), the Plaintiff is entitled to recover from State Farm two times the covered benefits plus reasonable attorney fees and costs.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in her favor and against the defendant State Farm, awarding money damages sufficient to compensate Plaintiff for all losses resulting from the Defendant's unreasonable delay and denial of Plaintiff's first-party UIM benefits, together with double damages, costs, and attorney fees as provided by C.R.S. § 10-3-1116(1). The Plaintiff requests pre-judgment and post-judgment interest, both

statutory and moratory, at the highest allowable rate, with pre-judgment interest included as an element of UIM benefits, from date of injury through date of date of satisfaction of judgment. Plaintiff requests reasonable attorney fees and costs (including expert witness fees), and such other relief as this Court may deem just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully submitted July 9, 2018.

                                      JOHN CASE, P.C.
Of Counsel to Evans Case, LLP

/s/John Case
John Case, Attorney for Plaintiff
12605 E. Euclid Drive #213
Centennial CO 80111
PH:  (303) 667-7407
FAX:  (303) 708-1612
brief@johncaselaw.com